IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Alexandria Division**

F I L E D

MAY 1 1 2010

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

CONVERGENCE TECHNOLOGIES   )
(USA), LLC   )
    **Plaintiff,**   )
       )
       **v.**   )      **No. 1:09cv1256**
       )
MICROLOOPS CORP., *et al.*,   )
    **Defendants.**   )

## MEMORANDUM OPINION

A threshold motion in this multi-defendant patent infringement suit seeks severance or dismissal of the claim against one of the defendants and transfer of the claims against the remaining defendants to the Northern District of California pursuant to 28 U.S.C. § 1404(a). For the reasons that follow, the motion to dismiss the claim against one of the defendants must be granted for lack of service of process, and the claims against the remaining defendants are appropriately transferred to the Northern District of California for the convenience of the parties and witnesses, and in the interest of justice.

**I.**[1]

Plaintiff Convergence Technologies (USA) ("Convergence") is a limited liability company with its principal place of business in Reston, Virginia. It is owned and controlled by Convergence Technologies Limited, a Hong Kong-based corporation. Convergence is the sole owner, by assignment, of United States Patent No. 7,422,053 ("the '053 patent"), which claims

---

[1] The facts stated herein are derived from the complaint and the parties' declarations, which are appropriately considered where, as here, the parties contest personal jurisdiction. *See Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003) (stating that court's disposition as to personal jurisdiction prior to discovery may be based on affidavits and other written materials).

(i) an apparatus heat transfer device, described as a vapor augmented heatsink with a multi-wick structure, and (ii) a method by which the heat transfer device is manufactured.

Convergence has sued four defendants for infringement—a manufacturer of the putatively infringing product and three alleged distributors and resellers of that product. Defendant Microloops Corporation ("Microloops"), the manufacturer of the putatively infringing product, is a Taiwanese corporation with its principal place of business in Taoyuan Hsien, Taiwan in the Republic of China. In addition to its Taiwan headquarters, Microloops maintains a U.S. sales office in Lancaster, Pennsylvania. Defendant Sapphire Technology Limited ("Sapphire") is a Chinese corporation with its principal place of business in Hong Kong. Defendant Hewlett-Packard Company ("HP") is a Delaware corporation with its principal place of business in Palo Alto, California. Defendant Dynatron Corporation ("Dynatron") is a California corporation with its principal place of business in Fremont, California. Notably, Palo Alto and Fremont are cities located within the Northern District of California. All defendants are represented by the same counsel.[2]

On November 9, 2009, Convergence filed a complaint alleging infringement of the '053 patent against Microloops, Sapphire, and HP. Prior to the filing of a responsive pleading, Convergence on December 15, 2009, filed an amended complaint, adding Dyantron as defendant. In the amended complaint, Convergence alleges that Microloops manufactures and sells "vapor chambers" that infringe the apparatus claims of the '053 patent using a method also claimed by the '053 patent. The amended complaint further alleges that Sapphire, HP, and Dynatron

---

[2] According to defendants' counsel, defendants' joint representation by the same counsel is the result of indemnity agreements between Microloops and the other three defendants, and hence raises no conflict of interest issues.

infringe the '053 patent by incorporating the vapor chambers manufactured by Microloops into their own products, which are sold in the United States, "including substantial sales in Virginia." Compl. ¶¶ 4-7. Specifically, Sapphire allegedly uses Microloops's vapor chambers in its computer graphics card products, while HP and Dynatron allegedly use Microloops's vapor chambers in their computer server component products.

The case docket reflects that a summons was issued by the Clerk of the Court on November 9, 2009, for service of the complaint on Microloops, Sapphire, and HP.  Following the filing of the amended complaint and the addition of Dynatron as a defendant, additional summonses issued for service of the amended complaint on all four defendants.  With respect to service, Convergence represents that it requested a waiver of service on all defendants pursuant to Rule 4(d), Fed. R. Civ. P.  Yet, the record clearly reflects, based on an uncontroverted affidavit by defendants' counsel, that no defendant waived service of process.  Consistent with this, the docket contains neither (i) a return of summons or proof of service of the complaint or amended complaint on any defendant, nor (ii) an executed waiver of service by any defendant. Nonetheless, it appears that Convergence formally served HP and Dynatron—the two California defendants—in March 2010, shortly before the 120-day service period expired. *See* Rule 4(m), Fed. R. Civ. P.  Convergence has not, however, effected service on Microloops or Sapphire.

HP and Dynatron each filed an answer to the complaint on April 1, 2010.  Both answers assert that personal jurisdiction over all defendants is lacking, and that the Eastern District of Virginia is not a proper venue in which to bring suit.  Moreover, HP and Dynatron counterclaimed under the Declaratory Judgment Act, seeking a declaration that the '053 patent is invalid.  Neither Microloops nor Sapphire has filed an answer.

-3-

On April 1, 2010, defendants jointly filed a motion for severance of the patent

infringement claim against Sapphire from the patent infringement claims against the other

defendants, or alternatively for dismissal of Sapphire for insufficient service of process, and for

transfer of the severed or remaining defendants—namely Microloops, HP, and Dynatron—to the

Northern District of California.  The parties filed numerous affidavits in support of their

respective positions on defendants' motion, and the issues were fully briefed and argued at a May

7, 2010 hearing, at which time the matter was resolved by a Bench ruling.

## II.

Analysis properly begins with the motion to dismiss the claim against Sapphire for failure

to effect service of process, for resolution of that motion may render the severance motion moot

and significantly affect the analysis of the transfer motion.[3]

---

[3] Worth noting is the fact that the motion is styled as a motion for severance and transfer, and not as a motion for dismissal for insufficient service of process pursuant to Rule 12(b)(5), Fed. R. Civ. P.  Nonetheless, it is clear from the face of the briefs that Sapphire seeks dismissal as an alternative to severance.  For instance, in its opening brief, defendants assert that "[t]o date, Microloops and Sapphire have not been served" and argue that "[a]lternatively, the Court could dismiss Sapphire without prejudice given Plaintiff's failure to timely [sic] effect service."  Defs.' Br. at 3, 4.  Likewise in their reply brief, defendants again note that "[i]f Sapphire is not dismissed for lack of service [of process], [then] in the interest of justice the severed claim [against Sapphire] . . . [should] be stayed pending disposition of the severed claims."  Defs.' Reply Br. at 3-4, 8 n.13.  Importantly, it is clear that Convergence had notice that defendants sought dismissal for lack of service of process because Convergence, in its brief, responded directly to defendants' contention that Microloops and Sapphire had not been served.  *See* Pl.'s Br. at 2 ("Plaintiff served all defendants by Notice and Request for Waiver, under FRCP 4(d)."); *id.* at 7 n.3 (arguing that defendants have "waived any objection to service").  Simply put, the parties have fully addressed the issue in the briefs.  Therefore, in the circumstances, and notwithstanding defense counsel's failure to caption its motion correctly, it is appropriate to deem the motion at bar as a motion for severance and, in the alternative, a motion for dismissal for insufficient, or lack of, service of process.  As Wright and Miller explain in their treatise,

> [m]any district judges tend to focus on whether any party has been prejudiced by
> the movant's lack of particularity and whether the court can comprehend the basis

Under Rule 4(m), Fed. R. Civ. P., "[i]f a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant." Ordinarily, service of process is effected by serving a defendant with a summons and a copy of the complaint, *see* Rule 4(c)(1), Fed. R. Civ. P., and proved by the filing of an affidavit of the process server, *see* Rule 4(*l*), Fed. R. Civ. P. Alternatively, however, a plaintiff may avoid the expense of serving a summons and complaint under Rule 4(d), Fed. Civ. P., by "notify[ing] such a defendant that an action has been commenced and request that the defendant waive service of a summons." Importantly, a defendant who receives a request to waive service of process may decline and require that the plaintiff serve a summons and copy of the complaint. *See* Rule 4(d)(2), Fed. R. Civ. P. (providing financial disincentive on defendants who elect not to waive). Where, as here, a defendant elects not to waive service of process, the "[a]ttempted service through mailing of the notice and request is ineffectual . . . [and] at that point, the plaintiff must seek to accomplish personal service on the defendant." *Johnson v. Warner*, 7:05CV00219, 2009 U.S. Dist. LEXIS 17143, at *3-*4 (W.D. Va. Mar. 6, 2009) (citing *Armco, Inc. v. Penrod-Stauffer Bldg. Sys. Inc.*, 733 F.2d 1087, 1089 (4th Cir. 1984)).

In this case, Convergence requested waiver of service pursuant to Rule 4(d), Fed. R. Civ.

---

of the motion and deal with it fairly; as a result, courts generally avoid engaging in an overly technical evaluation of the papers on which the motion is predicated and grant or deny the requested relief on the basis of the underlying merits of the petition.

5 Wright & Miller, Federal Practice and Procedure § 1192. Notwithstanding this result, it is worth emphasizing that counsel would do well to avoid this issue by clearly and correctly denominating its motions pursuant to the Federal Rules of Civil Procedure.

P. Yet, no defendant agreed to a waiver of service, *see* Defs.' Reply Br. Ex. 1 ¶3, and thus

Convergence was required to serve defendants with process prior to the expiration of the 120-day

service period, in this case by at least April 14, 2010.[4] Additionally, in the course of the May 7,

2010 hearing, Convergence's counsel acknowledged that no efforts were currently underway to

effect service of process on either Microloops or Dynatron.

In response, Convergence argues that Sapphire has waived any objection to insufficient

service of process. This argument plainly fails. Sapphire raised the issue in the motion at bar as

an alternative to severance, which constitutes Sapphire's "first significant defensive move," and

in this regard it is clear that a litigant only waives this defense where, unlike here, it is not raised

"at the time the first significant defensive move is made—whether it be by way of a Rule 12

motion or a responsive pleading." 5C Wright & Miller, Federal Practice and Procedure § 1391.

Thus, as Convergence presents no proof of service on Sapphire within the 120-day period

prescribed in Rule 4(m), Fed. R. Civ. P., and presents no good cause for extending the service

period,[5] Convergence's complaint against Sapphire must be dismissed without prejudice.[6]

---

[4] This date is calculated from the filing of the December 2009 amended complaint. Notably, however, the 120-day period likely expired in early March with respect to the defendants named in the original November 2009 complaint, namely Microloops, Sapphire, and HP. Although the Fourth Circuit has not directly addressed whether the 120-day period provided in Rule 4(m), Fed. R. Civ. P., starts anew on the filing of an amended complaint, other courts have reasonably concluded that the filing of an amended complaint does not restart the 120-day period except as to those defendants newly added in the amended complaint. *See, e.g., Bolden v. City of Topeka*, 441 F.3d 1129, 1148 (10th Cir. 2006); *accord* 1 James Wm. Moore et al., Moore's Federal Practice § 4.80 (3d ed. 1997); 4B Wright & Miller, Federal Practice and Procedure § 1137. It is unnecessary to reach or decide this issue here, as Convergence failed to serve Sapphire within 120 days of filing either the complaint or the amended complaint.

[5] In its opposition brief, Convergence argues that service was made "by Notice and Request for Waiver, under FRCP 4(d)." As noted *supra*, however, mailing of a request for waiver does not satisfy the service requirements set forth in Rule 4, Fed. R. Civ. P., and courts

## III.

Microloops, HP, and Dynatron also seek transfer of this case to the Northern District of

California pursuant to 28 U.S.C. § 1404(a).  In support of their transfer motion, these defendants

principally contend that the Due Process Clause bars the exercise personal jurisdiction over

Microloops and Dynatron in Virginia, and therefore transfer of the entire matter is warranted in

the interest of justice.  Although no defendant formally seeks dismissal for lack of personal

jurisdiction under Rule 12(b)(2), Fed. R. Civ. P.,[7] resolution of this issue significantly affects the

transfer calculus under 28 U.S.C. § 1404(a).  *See Va. Beach v. Roanoke River Basin Ass'n*, 776

F.2d 484, 488-89 (4th Cir. 1984) (finding transfer to be warranted where personal jurisdiction

was lacking).  Accordingly, it necessary to address the personal jurisdiction issues prior to

considering the transfer request.

### A.

The parties sharply contest whether there is personal jurisdiction over Microloops and

---

have sensibly held that ignorance of procedural rules does not constitute good cause for
extending the 120-day period for service. *See, e.g., Townsel v. County of Contra Costa*, 820 F.2d
319, 320 (9th Cir. 1987); *Kersh v. Derozier*, 851 F.2d 1509, 1512 (5th Cir. 1988). *See generally
Inst. for Policy Studies v. United States CIA*, 246 F.R.D. 380, 384-85 (D.D.C. 2007) (listing
cases).

[6] Notably, under the plain language of Rule 4(m), Fed. R. Civ. P., Convergence cannot
argue that it was afforded inadequate notice of dismissal for insufficient service of process, as
notice is only required where dismissal is based on the Court's *sua sponte* action. *See* 4B Wright
& Miller, Federal Practice and Procedure § 1137 ("As the cases in the notes below indicate, the
dismissal may occur either as a result of a motion to dismiss by the defendant or be ordered on
the initiative of the court with notice to the plaintiff.").  Here, dismissal is based on defendants'
motion. *See supra* note 3.

[7] Defendants represent that while they believe dismissal would be proper under Rule
12(b)(2), Fed. R. Civ. P., they seek transfer of the case in order to bypass Convergence's refiling
this patent infringement suit in the Northern District of California.

Dynatron in Virginia.[8]  The parties' personal jurisdiction dispute focuses chiefly on whether

jurisdiction is established based on a stream of commerce theory.  *See Asahi Metal Indus. Co. v.*

*Superior Court*, 480 U.S. 102 (1987).

Yet, before addressing the merits of the personal jurisdiction question, it is necessary to

address Convergence's claim that Microloops and Dynatron have waived any objection to

personal jurisdiction.  Specifically, Convergence asserts that defendants' motion for severance

and transfer waives any objection to personal jurisdiction because it is not a motion to dismiss for

lack of personal jurisdiction.  This argument misapprehends the law.  To begin with, it is well-

established that objections to personal jurisdiction "must be raised 'at the time the first

significant defensive move is made—whether it be by way of a Rule 12 motion or in a responsive

pleading.'"  *Rates Tech., Inc. v. Nortel Networks Corp.*, 399 F.3d 1302, 1308 (Fed. Cir. 2005)

(quoting 5C Wright & Miller, Federal Practice and Procedure § 1391).  Additionally, it is well-

understood that a motion to transfer pursuant to 28 U.S.C. § 1404 is distinct from a motion to

dismiss pursuant to Rule 12(b), Fed. R. Civ. P.  *See* 5B Wright & Miller, Federal Practice and

Procedure § 1352 ("[M]otions to transfer are made pursuant to a motion under the statute rather

than under Rule 12(b)(3) . . . .").  From this, courts have correctly reasoned that a § 1404 motion

to transfer does not waive objections to personal jurisdiction on the ground that a Rule 12(h)

waiver only applies where a Rule 12(b) defense is omitted from a responsive pleading or prior

Rule 12(b) motion.  *See, e.g., Dwyer v. Bicoy*, No. 08-cv-01195, 2008 U.S. Dist. LEXIS 105130,

at *10-*12 (E.D. Va. Dec. 22, 2008).  Moreover, 28 U.S.C. § 1406(a), which permits a district

---

[8] Although HP in its answer asserted a defense of lack of personal jurisdiction, defendants concede in their briefs that there is personal jurisdiction over HP in Virginia.  No party addressed the issue of personal jurisdiction over Sapphire in Virginia.

court to dismiss or transfer a case "laying venue in the wrong division or district," clearly forecloses Convergence's waiver argument. If Convergence were correct that a motion to transfer waives an objection to personal jurisdiction, there would be no circumstance in which § 1406 would operate because the filing of the motion to transfer would automatically rectify any defect in personal jurisdiction.[9] This anomalous result is avoided by recognizing that the filing of a motion to transfer does not operate as a waiver of a personal jurisdiction objection. Consistent with this, the Supreme Court has expressly recognized that "[t]he language of § 1406 (a) is amply broad enough to authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed had personal jurisdiction over the defendants or not." *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962).

These principles, applied here, compel the conclusion that neither Microloops nor Dynatron has waived its personal jurisdiction defense by filing the motion at bar. Dynatron clearly asserted and preserved its defense of lack of personal jurisdiction in its answer and reasserted this defense as a basis for severance and transfer.[10] Nor can it be said that Microloops has waived personal jurisdiction. Microloops was never served with the complaint or the amended complaint, and accordingly was not required to file a responsive pleading preserving its

---

[9] Although § 1406 refers to improper venue, not personal jurisdiction, the two concepts are closely intertwined. *See* 14D Wright et al., Federal Practice and Procedure § 3827, at 569 ("Since venue often is tied up with personal jurisdiction, a plaintiff who is mistaken about venue also is mistaken about personal jurisdiction.").

[10] In the course of the May 7, 2010 hearing, counsel raised the issue that Dynatron's filing a counterclaim under the Declaratory Judgment Act may bear on the waiver analysis. Yet, the Federal Circuit has directly addressed this issue, holding that "filing a counterclaim, compulsory or permissive, cannot waive a party's objections to personal jurisdiction, so long as the requirements of Rule 12(h)(1) are satisfied." *Rates Tech.*, 399 F.3d at 1307-08.

personal jurisdiction defense. Furthermore, the motion at bar for severance and transfer does not implicate the Rule 12(h) waiver rule because the motion is not a Rule 12(b) motion. Thus, Convergence's argument that Microloops's and Dynatron's objections to personal jurisdiction have been waived must be rejected, and the merits of the personal jurisdiction issues as to those defendants must be addressed.

Whether a court has personal jurisdiction over a given defendant in a patent infringement suit is governed by Federal Circuit law, not the law of the regional circuit in which the case is litigated. *See Avocent Hunstville Corp. v. Aten Int'l Co., Ltd.*, 552 F.2d 1324, 1328 (Fed. Cir. 2009) ("[W]e apply Federal Circuit law because the jurisdictional issue is 'intimately involved with the substance of the patent laws.'" (quoting *Akro Corp. v. Luiker* 45 F.3d 1541, 1543 (Fed. Cir. 1995))). Where, as here, the parties have not yet conducted discovery, a plaintiff is required to make only a *prima facie* showing that defendants are subject to personal jurisdiction. *See id.* at 1328-29. In determining whether a plaintiff has established a *prima facie* case, a court "must accept the *uncontroverted* allegations in the plaintiff's complaint as true and resolve any factual conflicts in the affidavits in the plaintiff's favor." *Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003) (emphasis added).

Under well-settled Federal Circuit precedent, the personal jurisdiction inquiry proceeds in two steps. As the Federal Circuit has explained, "[i]n order to establish personal jurisdiction in a patent infringement case over a non-resident defendant whose products are sold in the forum state, a plaintiff must show both that the state long arm statute applies and that the requirements of due process are satisfied." *Commissariat à l'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 395 F.3d 1315, 1319 (Fed. Cir. 2005). Where a forum state's highest court has interpreted

-10-

its long-arm statute to extend the reach of its courts to the limits of due process, "the jurisdictional analysis collapses into a single determination of whether the exercise of personal jurisdiction comports with due process." *Avocent*, 552 F.3d at 1329 (bypassing long-arm statute step and conducting only due process inquiry). Significantly, the Federal Circuit recently recognized that the Supreme Court of Virginia interprets the Virginia long-arm statute as "generally authoriz[ing] the exercise of jurisdiction to the full extent permitted by the U.S. Constitution," and therefore held that "the statutory and constitutional inquiries coalesce into the question whether due process is satisfied." *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1411 (Fed. Cir. 2009).[11] Here, no party contends that the Virginia long-arm statute does not reach the conduct alleged in the amended complaint; rather, the parties' arguments focus only on the constitutional due process issue. Accordingly, only the due process issue is addressed here.

The modern constitutional test for personal jurisdiction—commonly referred to as the "minimum contacts" test—was set forth by the Supreme Court in *International Shoe Co. v.*

---

[11] Importantly, the Supreme Court of Virginia's statement—cited by the Federal Circuit in *Touchcom*—that the reach of the Virginia long-arm statute is concurrent with the scope of the Due Process Clause was made with respect to Virginia Code § 8.01-328.1(A)(1), which permits a Virginia court to exercise personal jurisdiction over a cause of action arising from a defendant's transaction of business in Virginia.

> The purpose of our "long arm statute" is to assert jurisdiction, to the extent permissible under the Due Process Clause of the Constitution of the United States, over nonresidents who engage in some purposeful activity in Virginia. And a single act by a nonresident which amounts to "transacting business" in Virginia and gives rise to a cause of action may be sufficient to confer jurisdiction upon our courts.

*See Danville Plywood Corp. v. Plain & Fancy Kitchens, Inc.*, 238 S.E.2d 800, 802 (Va. 1977) (internal citation omitted).

*Washington*, 326 U.S. 310 (1945).[12]  Specifically, the Supreme Court identified two requirements

for the exercise of personal jurisdiction: that a defendant (1) have certain minimum contacts with

a forum state such that (2) the maintenance of the suit does not offend "traditional notions of fair

play and substantial justice."  *Id.* at 316.  Within the *International Shoe* framework, the Supreme

Court has recognized that personal jurisdiction may be of two types, general or specific.  General

jurisdiction "requires that the defendant have 'continuous and systematic' contacts with the

forum state and confers personal jurisdiction even when the cause of action has no relationship

with those contacts."  *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1200 (Fed. Cir.

2003) (quoting *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 416 (1984)).

By contrast, specific jurisdiction may exist in the absence of "continuous and systematic"

contacts with a forum state, provided that the assertion of personal jurisdiction is "based on

activities that 'arise[] out of' or 'relate[] to the cause of action.'"  *Id.* (quoting *Burger King Corp.

v. Rudzewicz*, 471 U.S. 462, 472-73 (1985)) (alterations in original).  In this case, Convergence

does not argue that there is general jurisdiction in Virginia over Microloops or Dynatron, and

accordingly the analysis here focuses solely on the specific jurisdiction issue.

Based on these general principles, the Supreme Court has determined that nonresident

defendants may be subject to suit in a forum because they engage in activities outside the forum

that result in the flow of goods in commerce to the forum.  This "stream of commerce" theory of

personal jurisdiction is central to the parties' dispute here, and thus warrants some elaboration.

Notably, the Federal Circuit has made clear that the stream of commerce theory applies in patent

---

[12] For a detailed history of the Supreme Court's jurisprudence relating personal
jurisdiction and the evolution of the minimum contacts test, *see generally Lesnick v.
Hollingsworth & Vose Co.*, 35 F.3d 939, 941-45 (4th Cir. 1994).

infringement suits. *See Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1565-68 (Fed. Cir. 1994).

The Supreme Court first recognized the stream of commerce theory in *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980). In that case, the plaintiffs, en route to their new residence in Arizona, were involved in an automobile accident in Oklahoma, where they ultimately brought a products liability suit against both the New York distributor and New York dealership from which they had purchased the automobile. The plaintiffs argued that the Oklahoma court properly exercised jurisdiction over the New York corporations on the sole ground that, given the mobile nature of automobiles, it was foreseeable that a car purchased in New York may be driven to Oklahoma. This, the plaintiffs asserted, was a sufficient contact to satisfy due process under *International Shoe*. The Supreme Court rejected this argument, holding that "'foreseeability' alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause," particularly in light of recent decisions clarifying that the critical element of the due process analysis is whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Id.* at 296-97. Accordingly, the Supreme Court explained that

> if the sale of a product of a manufacturer or distributor . . . is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others. The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce *with the expectation that they will be purchased by consumers in the forum State*.

*Id.* at 297-98 (emphasis added).

-13-

The Supreme Court next addressed the requirements of the stream of commerce theory of

personal jurisdiction in *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102 (1987).  This

decision concerned a California court's exercise of personal jurisdiction over Asahi, a foreign

defendant with no direct California contacts, based on the fact that Asahi had established

distribution networks through which its products were incorporated into other goods sold in

California.  The Supreme Court unanimously concluded that the California court's exercise of

personal jurisdiction was improper because it offended the second *International Shoe*

requirement, namely "traditional notions of fair play and substantial justice."[13]  Yet, the Supreme

Court split on whether *International Shoe*'s minimum contacts requirement was satisfied.

Specifically, Justice O'Connor, writing for a plurality of four Justices, held that exercising

jurisdiction solely because Asahi placed an object into the stream of commerce did not satisfy

due process.  *Id.* at 112 (plurality opinion).  In her view, the exercise of personal jurisdiction was

consistent with due process only where "[a]dditional conduct of the defendant may indicate an

intent or purpose to serve the market in the forum State."  *Id.*[14]  Disagreeing with Justice

---

[13] See *Asahi*, 480 U.S. at 113-16 (O'Connor, J.) ("Considering the international context, the heavy burden on the alien defendant, and the slight interests of the plaintiff and the forum State, the exercise of personal jurisdiction by a California court over Asahi in this instance would be unreasonable and unfair."); *id.* at 116 (Brennan, J., concurring in part and concurring in the judgment) ("I do agree, however, with the Court's conclusion . . . that the exercise of personal jurisdiction over Asahi in this case would not comport with 'fair play and substantial justice,' *International Shoe Co. v. Washington*, 36 U.S. 310, 320 (1945)."); *id.* at 121-22 (Stevens, J., concurring in part and concurring in the judgment) ("California's exercise of jurisdiction over Asahi in this case would be 'unreasonable and unfair.'  *Ante*, at 116.  This finding alone requires reversal . . . .").

[14] Justice O'Connor identified the following examples of "additional conduct": "designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State."

O'Connor, and also writing for a plurality of four, Justice Brennan argued that the exercise of

personal jurisdiction was proper absent "additional conduct" because

> [t]he stream of commerce refers not to unpredictable currents or eddies, but to the
> regular and anticipated flow of products from manufacture to distribution to retail
> sale. As long as a participant in this process is aware that the final product is
> being marketed in the forum State, the possibility of a lawsuit there cannot come
> as a surprise.

*Id.* at 117 (Brennan, J., concurring in part and concurring in the judgment). Notably, Justice

Stevens joined neither the O'Connor nor the Brennan opinion, and thus neither of those Justices'

view of the stream of commerce theory commanded a majority of the Supreme Court.

Understandably, the *World-Wide Volkswagen* and *Asahi* decisions have created

significant confusion in lower courts, including the Federal Circuit. Indeed, the Federal Circuit

has consistently declined to endorse either the O'Connor or the Brennan approach to the stream

of commerce theory. *See, e.g., Avocent*, 552 F.3d at 1330-31 (noting "significant confusion"

over *Asahi*); *Commissariat*, 395 F.3d at 1322 & n.7 ("We have yet to decide whether Justice

Brennan's standard is sufficient to satisfy due process, because we have yet to be presented with

facts that do not meet the more rigorous standard adopted by Justice O'Connor."); *Beverly Hills*

*Fan*, 21 F.3d at 1566 ("We need not join this debate here . . . ."). Nonetheless, the Federal

Circuit has made clear that the exercise of personal jurisdiction over a defendant based on the

stream of commerce theory requires, at a minimum, knowledge of the product's likely

destination through an established distribution channel. As explained in *Commissariat*, "this

case thus presents a factual scenario which would require us to determine whether or not

additional conduct, *beyond a showing of use of established distribution channels*, is required to

---

*Asahi*, 480 U.S. at 112 (plurality opinion).

meet the demands of due process under the stream of commerce theory."[15] *Commissariat*, 395

F.3d at 1322 (emphasis added); *accord Viam Corp. v. Iowa Export-Import Trading Co.*, 84 F.3d

424, 429 (Fed. Cir. 1996) (finding assertion of personal jurisdiction to be proper because "facts

clearly establish a regular chain of distribution").

These principles, applied here, compel the conclusion that Convergence has failed to

make a *prima facie* showing that there is personal jurisdiction over Microloops or Dynatron in

Virginia. Whether Justice O'Connor's or Justice Brennan's interpretation of the stream of

commerce theory governs need not be resolved here, as Convergence fails to meet even the lesser

threshold showing for personal jurisdiction required by Justice Brennan.

With respect to Microloops, Convergence submits no declaration or other evidence to

support a *prima facie* showing of personal jurisdiction. Although Convergence alleges in the

amended complaint that Microloops makes "substantial sales in Virginia," this statement is

controverted by the declaration of David Chao, Microloops's Chairman and CEO, and thus the

allegation may not be accepted as true. *See Elecs. for Imaging*, 340 F.3d at 1349 ("[A] district

court must accept the *uncontroverted* allegations in the plaintiff's complaint as true . . . ."

(emphasis added)). Significantly, Convergence submits no affidavit to rebut Chao's statements

that

> [w]hile most sales of our vapor chambers, including sales to Hewlett-Packard and
> Sapphire, are made outside of the United States, Microloops has made a limited
> number of sales to Dynatron in Fremont, California. At no time though has
> Microloops or Microloops Thermal sold, or offered for sale, the accused vapor
> chambers in Virginia.

---

[15] The Federal Circuit declined to resolve this question because the record was deemed inadequate. *See Commissariat*, 395 F.3d at 1322.

Defs.' Br. Ex. 2 ¶7. Significantly, in the absence of an affidavit by Convergence controverting the facts as stated by Chao, his statements are the only evidence in the record of Microloops's sales in the United States, and hence control the analysis at this stage. *See Elecs. for Imaging*, 340 F.3d at 1349 ("[A] district court must . . . resolve any factual *conflicts* in the affidavits in the plaintiff's favor." (emphasis added)).

Yet, even assuming Convergence's allegation that Microloops makes "substantial sales in Virginia" to be true, Convergence still cannot make a *prima facie* showing of personal jurisdiction under the stream of commerce theory, as interpreted by the Federal Circuit in *Commissariat*. No pleading or document in the record establishes that Microloops knew its vapor chamber would be incorporated into other products sold in Virginia such that Microloops might reasonably anticipate being haled into Virginia court. *See World-Wide Volkswagen*, 444 U.S. at 297. Nor is there any evidence establishing a regular channel of distribution of vapor chambers between Microloops's Taiwan manufacturing facilities and Virginia. *See Commissariat*, 395 F.3d at 1322. Absent these showings, Convergence fails to satisfy the stream of commerce theory of personal jurisdiction.

The same result obtains with respect to whether there is personal jurisdiction over Dynatron in Virginia. On this issue, Convergence's evidence in support of a *prima facie* case of personal jurisdiction consists of the following: (i) an allegation in the amended complaint that Dynatron makes "substantial sales in Virginia" of the infringing products; (ii) Webpage printouts from various third-party online retailers—namely atacom.com, CensusPC.com, frozencpu.com, linkecomputer.com, ncixus.com, and newegg.com—that sell Dynatron products; and (iii) a Dynatron brochure containing Dynatron product and pricing information. Again, Convergence

-17-

submits no affidavit in support of its claim of personal jurisdiction.

This evidence fails to make a *prima facie* showing of personal jurisdiction over Dynatron. To begin with, the allegation in the amended complaint regarding Dynatron's sales in Virginia cannot be accepted as true because it is clearly controverted by the declaration of Ian Lee,[16] a Dynatron sales engineer, in which Lee avers, "Dynatron has never sold any products into Virginia that includes a Microloops vapor chamber." Defs.' Br. Ex. 3 ¶7.[17] Moreover, the Webpage printouts and the Dynatron catalogue do not support a finding of personal jurisdiction under the stream of commerce theory because the documents fail to establish any link between the infringing products and Virginia.

Convergence cites *Taltwell, LLC v. Zonet USA Corp.*, No. 3:07cv543, 2007 U.S. Dist. LEXIS 93465 (E.D. Va. Dec. 19, 2007), for the proposition that a third-party retailer's selling an allegedly infringing product online is itself sufficient to satisfy the exercise of personal jurisdiction under the Due Process Clause. Yet, Convergence's reliance on *Taltwell* is unavailing for two reasons. First, it is factually distinguishable on the ground that the Websites here, unlike

---

[16] *See Elecs. for Imaging*, 340 F.3d at 1349 ("[A] district court must accept the *uncontroverted* allegations in the plaintiff's complaint as true . . . ." (emphasis added)).

[17] It is worth noting that Lee also avers that "Dynatron has sold some other unrelated products into Virginia, the sales [of which] have been minimal," accounting for less than 3% of the company's total 2009 United States revenue. On this record, Dynatron's selling these products, which are not at issue in this patent infringement suit, do not appear to support the exercise of general or specific jurisdiction. *See Silent Drive*, 326 F.3d at 1200 (requiring "continuous and systematic" contacts for general jurisdiction); *id.* (explaining that specific jurisdiction is proper only when the "activities . . . 'arise[] out of' or 'relate[] to the cause of action.'" (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985)) (alterations in original)).

the site in *Taltwell*, are passive,[18] and the Federal Circuit has held that ordering an allegedly

infringing product online from a third-party distributor, without more, does not give rise to

personal jurisdiction under the stream of commerce theory where, as here, the distributor's

Website was passive and the purchaser initiated the sale himself. *See Maynard v. Phila. Cervical

Collar Co., Inc.*, 18 F. App'x 814, 816-17 (Fed. Cir. 2001) (per curiam) ("A passive website is

insufficient to establish purposeful availment for the purpose of due process. . . . Maynard

ordered this product from a third-party distributor and initiated the sale himself."). Second,

*Taltwell* is further factually distinguishable, as that case clearly holds that personal jurisdiction

was properly exercised over Zonet, an online retailer, because Zonet, unlike Microloops and

Dynatron, conceded in an affidavit that allegedly infringing goods were actually delivered to the

forum state. *See Taltwell*, 2007 U.S. Dist. LEXIS 93465, at *11-*12 (emphasizing that Zonet

"admits that three of Zonet's resellers, distributors, or retailers are located in Virginia").

Additionally, the district court in *Taltwell* also notes that "[u]nder a stream of commerce theory,

Taltwell would have to present a prima facie case that Zonet delivered its goods to a non-

Virginia retailer, such as Amazon.com or Tigerdirect.com, *knowing that some of the goods would

be sold in Virginia*." *Id.* at *15 (emphasis added). Neither of these holdings is satisfied in this

case. Lee avers in his supplemental affidavit: (i) that less than a dozen G218 coolers—a product

containing the allegedly infringing vapor chamber—were sold to Canadian-based retailer

ncixus.com, with Dynatron having no knowledge as to whom ncixus.com ultimately sold the

---

[18] *Compare Taltwell*, 2007 U.S. Dist. LEXIS 93465, at *5 ("Taltwell also alleges that
Zonet sells its products directly through its website, which is *interactive* and accessible by
persons in Virginia." (emphasis added)), *with* Defs.' Reply Br. Ex. 2 ¶9 ("[O]rders for any
Dynatron product cannot be made through the Dynatron website.").

product; and (ii) that "Dynatron has not actually sold any of the G218 coolers to Atacom, CensusPC, FrozenCPU, Linke Computer Limited or Newegg." Defs.' Reply Br. Ex. 2 ¶7. Notably, these statements are not controverted by any affidavits submitted by Convergence, and hence control the analysis at this stage. *See Elecs. for Imaging*, 340 F.3d at 1349 ("[A] district court must . . . resolve any factual *conflicts* in the affidavits in the plaintiff's favor." (emphasis added)).

In sum, then, no evidence submitted by Convergence establishes that Microloops or Dynatron directly delivered their products to Virginia, or placed their products in the stream of commerce with the knowledge that they would ultimately be sold in Virginia through an established distribution channel or otherwise. Significantly, unrefuted declarations submitted by Microloops and Dynatron establish that no allegedly infringing products were sold directly or indirectly in Virginia. Accordingly, on this record, no *prima facie* showing of personal jurisdiction over Microloops or Dynatron has been made.

### B.

Given (i) that Sapphire must be dismissed for insufficient service of process, and (ii) that Convergence has failed to make a *prima facie* showing that Microloops and Dynatron are subject to personal jurisdiction in Virginia, the remaining question at bar is whether the circumstances warrant transfer of Convergence's patent infringement claims against Microloops, HP, and Dynatron to the Northern District of California. Because the Federal Circuit has held that the law of the regional circuit applies in considering a transfer motion under § 1404(a),[19] the decisions of

---

[19] *See Storage Tech. Corp. v. Cisco Sys., Inc.*, 329 F.3d 823, 836 (Fed. Cir. 2003) ("In reviewing a district court's decision regarding a motion to transfer under 28 U.S.C. § 1404(a), this court applies the law of the appropriate regional circuit, in this case the Seventh Circuit.");

the Fourth Circuit control whether transfer is warranted in this case.

Although defendants move for transfer only under § 1404(a), which permits transfer "[f]or the convenience of the parties and witnesses," 28 U.S.C. § 1404(a), the motion is properly construed as seeking transfer under § 1406(a) with respect to Microloops and Dynatron because the case, as originally filed in the Eastern District of Virginia, "lay[] venue in the wrong division or district," *id.* § 1406(a).  As Wright and Miller explains:

> Sections 1404(a) and 1406(a) are both short, apparently clear, and seemingly mutually exclusive.  Section 1404(a) permits transfer of a civil action to any other district in which it could have been brought, and refers to a civil action in which venue is properly laid in the district where the case was filed.  Section 1406(a) pertains to transfer of a case laying venue in the "wrong district."

14D Wright et al., Federal Practice and Procedure § 3827, at 575 (quoting *Teng v. Skaarup Shipping Corp.*, 743 F.2d 1140, 1147 (5th Cir. 1984)).  Therefore, the transfer motion with respect to HP, which is properly subject to suit in Virginia, is governed by § 1404(a); the transfer motion with respect to Micrloops and Dynatron, which are not properly subject to suit in Virginia because there is no personal jurisdiction over these defendants, is governed by § 1406(a). Nonetheless, whether a transfer is "in the interest of justice" under either § 1404(a) or § 1406(a) requires substantially the same analysis, and thus it is appropriate to address the transfer of all defendants together.

As an initial matter, the transfer statutes require, as a prerequisite, that the transferee court be located in a "district or division in which [the case] could have been brought" initially.  28

---

*Winner Int'l Royalty Corp. v. Wang*, 202 F.3d 1340, 1352 (Fed. Cir. 2000) ("Our review of the district court's denial of Wang's motion to transfer, as a procedural matter, is governed by the law of the regional circuit in which it sits, here the United States Court of Appeals for the District of Columbia Circuit.").

U.S.C. §§ 1404(a), 1406(a).  In this case, the Northern District of California is clearly such a

district because there is personal jurisdiction over the remaining defendants in California.

Specifically, both HP and Dynatron have their principal places of business in the Northern

District of California.  Furthermore, Microloops concedes that it sold the allegedly infringing

products to Dynatron in California.  Accordingly, all three defendants are subject to personal

jurisdiction in California,[20] making venue proper under 28 U.S.C. § 1391 ("For purposes of

venue under this chapter, a defendant that is a corporation shall be deemed to reside in any

judicial district in which it is subject to personal jurisdiction at the time the action is

commenced.").  In the course of the May 7, 2010 hearing, this point was conceded by defendants'

counsel, who further represented that defendants would contest neither jurisdiction nor service of

process in the Northern District of California.

       In addition to this statutory prerequisite, courts have, on numerous occasions, identified

and discussed the principal factors to be considered in a transfer analysis, namely "plaintiff's

choice of venue, witness convenience and access, and the interest of justice."  *Corry v. CFM*

*Majestic Inc.*, 16 F. Supp. 2d 660, 666 (E.D. Va. 1998).  *See generally* Annotation, *Questions as*

*to Convenience and Justice of Transfer Under Forum Non Conveniens Provision of Judicial*

*Code, (28 USC § 1404(a))*, 1 A.L.R. Fed. 15 (1969).  The various transfer factors, applied here,

point persuasively to the conclusion that transfer of the case against Microloops, HP, and

Dynatron to the Northern District of California is warranted.

_____

[20] *See* Ca. Code Civ. P. § 410.1 ("A court of this state may exercise jurisdiction on any
basis not inconsistent with the Constitution of this state or of the United States."); *International
Shoe*, 326 U.S. at 316-18 (recognizing that presence and sufficient business contacts related to
the subject of the suit give rise to personal jurisdiction).

-22-

To begin with, although a plaintiff's choice of its home forum is ordinarily given substantial weight in the transfer analysis,[21] this factor is not controlling, and indeed courts have granted transfers pursuant to § 1404(a) even where a plaintiff was a resident of the district in which it originally filed suit. *See id.* at 68 (listing decisions in which case was transferred away from plaintiff's home forum); *see also Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (recognizing that no single factor is dispositive in transfer analysis). Several circumstances present in this case lessen the weight properly attributable to Convergence's choosing to bring suit in the Eastern District of Virginia. Most notably, Convergence is owned and controlled by a foreign corporation with its principal activities occurring in Hong Kong, and in this respect it appears from the current record that Virginia is only nominally Convergence's home forum. In a declaration submitted in opposition to defendants' motion, Stephen Lee, Convergence's Chief Executive Officer, avers that the company was incorporated in Virginia "to manage over all U.S. steady sales orders *for Convergence Technologies Limited (a Hong Kong based Corporation).* Pl.'s Ex. 1 ¶2 (emphasis added). This statement characterizes Convergence as a mere sales agent of its foreign parent company. In addition, Lee—the principal trial witness identified by Convergence—resides in Hong Kong, as does a former employee identified as a likely witness. *See id.* ¶4; Defs.' Ex. 2 ¶9 (Declaration of David Chao of Microloops averring that "Mr. Lee resides in Hong Kong"). Likewise, Lee avers that "[a]ll the documents relevant to the patent and the case are in Hong Kong." Pl.'s Ex. 1 ¶6. The fact that all of Convergence's material evidence

---

[21] *See Collins v. Straight, Inc.*, 748 F.2d 916, 921 (4th Cir. 1984) ("With regard to the question of change of venue, a district court is required to weigh the factors involved and unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.").

relating to its patent infringement claim is located in Hong Kong only reinforces the argument that the suit relates to Convergence's Hong Kong parent company, and not to Convergence as such.  Also significant is the fact that Lee's affidavit does not indicate whether Convergence actually conducts business activities, or has employees, in Virginia.  Indeed, during the May 7, 2010 hearing, Convergence's counsel was unable to state whether Convergence had *any* employees working at its Virginia office or if *any* business was in fact conducted from that office.  *See WiAV Solutions LLC v. Motorola, Inc.*, 3:09cv447, 2009 U.S. Dist. LEXIS 96994, at *10-*11 (E.D. Va. Oct. 20, 2009) (according plaintiff's choice of forum substantial weight in the transfer analysis because it was clear from the record that plaintiff "operates all of its business activities out of its [Virginia] office, and its employees regularly work in that office").  At bottom, then, whether Virginia has a substantial connection to the events giving rise to the litigation remains, at best, unclear, and therefore Convergence's choice of its home forum should receive less deference than it is typically accorded.  *See Telepharmacy Solutions, Inc. v. Pickpoint Corp.*, 238 F. Supp. 2d 741, 743 (E.D. Va. 2003) ("[I]f . . . the cause of action bears little or no relation to that forum, the plaintiff's chosen venue is not entitled to such substantial weight." (citation and quotation marks omitted)).

Sections 1404(a) and 1406(a) also require that transfer be "in the interest of justice," and on this point transfer of the claims against Microloops, HP, and Dynatron is in the interest of justice because (i) Microloops and Dynatron are not subject to personal jurisdiction in Virginia, and thus must either be dismissed or transferred under the plain language of § 1406(a), and (ii) transfer of the entire matter avoids the prospect that inconsistent judgments will be rendered on identical issues.  With respect to whether dismissal or transfer of the claims against Microloops

-24-

and Dynatron is preferred, courts have regularly "order[ed] transfer rather than . . . dismiss the action if it would be more efficient or economical to do so." 14D Wright et al., Federal Practice and Procedure § 3827, at 589. Here, transfer is appropriate because neither of these defendants seeks dismissal, and transfer short-circuits the purely ministerial exercise of refiling suit in the Northern District of California.[22]

Moreover, it is in the interest of justice to transfer the entire matter to the Northern District of California where all of the remaining defendants are properly subject to suit, as this avoids the possibility of inconsistent judgments being rendered on identical patent infringement issues. Indeed, it is well-settled that transfer under § 1404(a) is generally in the interest of justice if a decision not to transfer would lead to courts rendering inconsistent judgments on the same issue. As the Supreme Court has noted, "[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." *Cont'l Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1960); *accord Va. Beach v. Roanoke River Basin Ass'n*, 776 F.2d 484, 489 (4th Cir. 1985) ("Transfer and consolidation would also advance the economical resolution of the controversy over the permits. The parties would be able to litigate in one court the same issues that were the subject matter of actions instituted in two courts."). Notably, the potential for inconsistent judgments in patent cases may be greater on average than for many other types of cases owing chiefly to the large number of issues that typically arise in most patent cases, including, for example, infringement and willful infringement, various

---

[22] *See supra* note 7 (noting Microloops, HP, and Dynatron's election to seek transfer rather than dismissal under Rule 12(b)(2), Fed. R. Civ. P.).

invalidity issues under 35 U.S.C. §§ 102, 103, inequitable conduct, laches, waiver, not to mention *Markman* claim term determinations, which, in the mine run of patent cases, are rarely fewer than ten and often many more. Thus, the potential for inconsistent judgments is substantial if, following dismissal in this district, Convergence were to refile the dismissed claims against Microloops and Dynatron in California, while continuing to litigate in this district its claim against HP. For example, Microloops and Dynatron might be found liable for infringement while HP might not, notwithstanding the fact that a single, identical vapor chamber product is at issue. Accordingly, this factor—the potential for inconsistent judgments—while not dispositive, weighs significantly in favor of transfer in this case.

In response, Convergence argues that jurisdictional discovery may allow it to establish that there is personal jurisdiction over Microloops and Dynatron in Virginia, thereby eliminating (i) the basis for transferring the claims against Microloops and Dynatron, and (ii) the prospect that inconsistent *Markman* determinations or infringement/invalidity judgments might be rendered in this case. Although it is true that jurisdictional discovery may lead to a finding of personal jurisdiction over Microloops and Dynatron in Virginia, it is also possible that such discovery will lead to the opposite result. What is certain, however, is that jurisdictional discovery is expensive and time-consuming. And in this respect, it is important to note that the Federal Circuit has held the transfer of a patent case to be within a district court's discretion "if the transfer would obviate a substantial question of personal jurisdiction" and avoid jurisdictional discovery. *See In re Pfizer, Inc.*, 2010 U.S. App. LEXIS 4378, at *5 (Fed. Cir. Feb. 2, 2010). This principle is apposite here and provides an additional reason for transfer to the Northern District of California, namely that transfer avoids unnecessary jurisdictional discovery and

furthers "judicial economy and the interest of justice." *Id.* at *6.

The remaining transfer factors—namely the convenience of the parties, the ease of access to evidence, and the docket congestion of the transferor and transferee courts—on balance weigh in favor of transfer. Specifically, it appears that no parties' witnesses or documents are located in Virginia. Instead, Convergence's identified witnesses and documents are located in Hong Kong, Microloops's identified witnesses are located in Taiwan and its documents are located in Taiwan or Pennsylvania, and HP's and Dynatron's identified witnesses and evidence are located in California. Thus, California—which is considerably nearer than Virginia to the parties' Hong Kong, Taiwan, and California witnesses and documents—is a more convenient place for the parties to litigate this matter.

Convergence correctly argues that the comparative docket speeds of the transferor (E.D. Va.) and transferee (N.D. Cal.) fora weigh against transfer, the former according to Convergence averaging 10.2 months to trial and the latter 24.5 months to trial. Yet, these figures do not tell the whole story, as they are calculated averages for all types of civil cases. In this district, for example, patent cases, on average, take substantially longer to litigate than most civil cases. Given the Northern District of California's well-earned reputation as an experienced patent district,[23] the averages may well overstate the difference in docket speeds with respect to patent

---

[23] Indeed, the Northern District of California has promulgated local rules specific to patent infringement cases. *See* N.D. Cal. Patent R. 1-2 ("These rules apply to all civil actions filed in or transferred to this Court which allege infringement of a utility patent in a complaint, counterclaim, cross-claim or third party claim, or which seek a declaratory judgment that a utility patent is not infringed, is invalid or is unenforceable."); *Digital Background Corp. v. Apple, Inc.*, No. 07-cv-803, 2008 U.S. Dist. LEXIS 21101, at *9 (S.D. Ill. Mar. 17, 2008) (noting, in conducting transfer analysis, that "[t]he Northern District of California has special local rules related to patent cases, from which it can be inferred that the Northern District of California hears more patent cases than the Southern District of Illinois does").

cases. Moreover, although relative docket speeds is a pertinent factor in the transfer calculus, it

is rarely, if ever, a primary or decisive factor, and it is not so here. *See, e.g., Cognitronics*

*Imaging Sys. v. Recognition Research Inc.*, 83 F. Supp. 2d 689, 699 (E.D. Va. 2000) ("Docket

conditions, while a consideration, cannot be the primary reason for retaining a case in this

district."); *Hunter Eng'g Co. v. ACCU Indus.*, 245 F. Supp. 2d 761, 776 (E.D. Va. 2002) ("The

docket congestion factor supports a denial of the transfer motion, but only slightly, and does not

outweigh the interest in judicial economy."). *See generally* Annotation, 1 A.L.R. Fed. at 80-84

(discussing docket conditions factor and noting that "[c]alendar conditions, however, are not

decisive of the question of transfer.").

In response, Convergence relies chiefly on the argument that it has invested significant

resources in retaining and educating Virginia counsel, and that it cannot bear the additional

expense or spare the time necessary to reeducate California counsel. On this issue, it is important

to distinguish between (1) the inconvenience of retaining new counsel, which is not a proper

factor affecting the transfer analysis, and (2) the financial status of the parties, which may be a

proper factor to weigh in the transfer calculus. *See id.* at 69-73 (discussing factors separately).

Courts have explained that the convenience of counsel is not properly considered because "[i]t

will always be the case that the granting of a transfer will inconvenience counsel in the transferor

district or necessitate the engagement of new counsel, and if such facts were to be accorded much

weight in motions of this type, § 1404(a) would be rendered virtually nugatory." *Id.* at 70; *see*

*also Cognitronics*, 83 F. Supp. 2d at 698 ("Plaintiff's argument that the cost of transporting East

Coast counsel to litigate a case in the Southern District of California would pose an undue

hardship on their limited financial resources raises an improper consideration before this court.").

Nonetheless, courts have also held that it is not in the interest of justice to transfer a case if doing so would force the plaintiff to abandon the case or declare bankruptcy. *See* Annotation, 1 A.L.R. at 71-72.

In this case, Convergence's financial hardship argument does not tip the balance away from transfer for three reasons. First, the cost of reeducating new counsel in California is not a proper consideration here. Second, at this stage, there appears to be no personal jurisdiction over Microloops and Dynatron in Virginia, and it is likely that a fully litigated resolution of the question will be expensive and time consuming and still perhaps result in requiring Convergence to pursue its claims against these defendants elsewhere. And third, although Convergence contends that it "does not have sufficient resources to engage in a protracted litigation, as Convergence's market share has been placed in jeopardy by the infringing acts of Microloops,"[24] Convergence does not state that it will be financially unable to pursue its claim against the remaining defendants in the Northern District of California.[25] Indeed, the fact that Convergence's evidence and key witnesses are located in Hong Kong, and that no evidence or witness is located in Virginia, suggests that litigating in the Northern District of California will not burden Convergence with expenses materially different from the expenses that would be incurred in litigating the matter in Virginia, aside from the engagement of California counsel. Convergence concedes as much when it argues that, with respect to procuring its own documents

---

[24] Pl.'s Br. at 5.

[25] Notably, neither Convergence nor its parent company provide any specific information relating to their financial circumstances, the size of their operations, the degree to which defendants' sale of allegedly infringing products has eroded Convergence's market share, or the way in which this alleged market share erosion frustrates Convergence's ability to litigate in the Northern District of California.

from Hong Kong, "whether the destination is on the East Coast rather than the West Coast makes no material difference." Pl.'s Br. at 11-12. This case does not present the scenario, for example, in which Virginia counsel are in-house or have ready access to witnesses or documents in the home forum. Simply put, there is no basis for concluding that the litigation will be sufficiently less expensive or less protracted if transfer is denied. And to the extent that Convergence relies on the argument that Microloops's alleged infringement is eroding Convergence's market share, it is worth noting that this economic circumstance remains true whether the matter is litigated in Virginia or California. Significantly, as discussed *supra*, transfer to the Northern District of California avoids conducting unnecessary jurisdictional discovery, thereby eliminating this expense altogether and allowing Convergence to proceed directly and expeditiously to the merits of its patent infringement claims.

In sum, the application of the § 1404(a) and § 1406(a) factors to this case weigh in favor of transferring Convergence's patent infringement claim against Microloops, HP, and Dynatron to the Northern District of California.

## IV.

In sum, because Convergence has, without good cause, failed to effect service of process on Sapphire within 120 days of filing its complaint, dismissal of the claim against Sapphire is mandated under Rule 4(m), Fed. R. Civ. P. This renders moot the severance motion. Moreover, it is clear that Convergence cannot make a *prima facie* showing that there is personal jurisdiction over Microloops and Dynatron in Virginia under the stream of commerce theory. This lack of personal jurisdiction over Microloops and Sapphire in Virginia—in addition to consideration of the factors traditionally identified by courts in resolving a motion for transfer pursuant to 28

-30-

U.S.C. §§ 1404(a), 1406(a)—points persuasively to the conclusion that transfer of the claims against Microloops, HP, and Sapphire to the Northern District of California is convenient for the parties and in the interest of justice.

An appropriate Order has issued.


Alexandria, Virginia
May 11, 2010


_____

**T. S. Ellis, III**
**United States District Judge**